**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

LONGHORN HD LLC,

      *Plaintiff,*

    v.

JUNIPER NETWORKS, INC.,

      *Defendant.*

Case No. 2:21-cv-00099-JRG

**JUNIPER'S MOTION TO TRANSFER VENUE TO
THE NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

LEGAL STANDARDS .........................................................................................................7

ARGUMENT .........................................................................................................................8

    I.     LONGHORN COULD'VE BROUGHT THIS CASE IN THE NORTHERN
         DISTRICT OF CALIFORNIA...................................................................................8

    II.    THE PRIVATE- AND PUBLIC-INTEREST FACTORS WARRANT
         TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA. ........................9

        A.    The Private-Interest Factors Strongly Favor Transfer.........................................9

        B.    The Public-Interest Factors Also Favor Transfer. ...............................................13

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*ACQIS LLC v. EMC Corp.*,
   67 F. Supp. 3d 769 (E.D. Tex. 2014) ....................................................................13

*Affinity Labs of Texas v. Samsung Elecs. Co.*,
   968 F. Supp. 2d 852 (E.D. Tex. 2013) ...................................................................14

*Blue Spike, LLC v. Juniper Networks, Inc.*,
   No. 6:17-cv-16, 2018 WL 4222994 (E.D. Tex. Mar. 8, 2018)..................................1

*Blue Spike, LLC v. Texas Instruments, Inc.*,
   No. 6:12-cv-499, 2014 WL 1374045 (E.D. Tex. Mar. 13, 2014)............................11

*Brite Smart Corp. v. Google Inc.*,
   No. 2:14-cv-760, 2015 WL 4638215 (E.D. Tex. Aug. 3, 2015) ............................14

*Chrimar Sys., Inc. v. Juniper Networks, Inc.*,
   No. 6:15-cv-630, 2016 WL 126936 (E.D. Tex. Jan. 11, 2016)................................1

*Fujitsu Ltd. v. Tellabs, Inc.*,
   639 F. Supp. 2d 761 (E.D. Tex. 2009) ...............................................10, 12, 14, 15

*GraphOn Corp. v. Juniper Networks, Inc.*,
   No. 2:07-cv-373, Dkt. No. 161 (E.D. Tex. Dec. 30, 2009) ......................................1

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) .....................................................................passim

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ..................................................................9, 14, 15

*In re Nintendo Co., Ltd.*,
   589 F.3d 1194 (Fed. Cir. 2009) ...........................................................................9, 11

*In re Radmax, Ltd.*,
   720 F.3d 285, 288 (5th Cir. 2013) ...........................................................................8

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ..................................................................9, 10, 13

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .........................................................................8, 9, 14

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .....................................................................8, 9, 13, 14

*Neil Bros. v. World Wide Lines, Inc.*,
   425 F. Supp. 2d 325 (E.D.N.Y. 2006) .......................................................................... 11

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
   No. 2:10-cv-224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ..................................... 1

*Orinda Intellectual Properties USA Holding Grp., Inc. v. Sony Corp.*,
   No. 2:08-cv-323, 2009 WL 3261932 (E.D. Tex. Sept. 29, 2009) ............................... 15

*Parity Networks, LLC v. Juniper Networks, Inc.*,
   No. 6:17-cv-495, 2018 WL 9539505 (E.D. Tex. Aug. 10, 2018) .................................. 1

*Realtime Data LLC v. Barracuda Networks Inc.*,
   No. 6:17-cv-120, 2017 WL 4791970 (E.D. Tex. Oct. 24, 2017) ................................. 12

*Software Rights Archive, LLC v. Google, Inc.*,
   No. 2:07-cv-511, 2010 WL 2950351 (E.D. Tex. July 22, 2010) ......................... 10, 11

*TC Heartland, LLC v. Kraft Foods Group Brands, LLC*,
   137 S.Ct. 1514 (2017) ............................................................................................. 8, 9

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
   No. 2:10-cv-364, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ................................. 10

## INTRODUCTION

Five times, in cases brought by other plaintiffs, the Eastern District has granted Juniper's motion to transfer to the Northern District of California under 28 U.S.C. § 1404(a).[1] And this case presents many of the same factors that those five prior decisions relied on, including the location of the evidence, convenience for willing witnesses, securing the attendance of other witnesses, and serving the local interest. And unlike in those five prior cases, Juniper no longer maintains any place of business in the Eastern District, having closed its Plano sales office at the end of March 2021.

The relevant witnesses in this case aren't in the Lone Star State. Six of the seven relevant Juniper engineers work in the Northern District of California, with the seventh in Canada. The vast majority of the relevant Juniper documents (including confidential source code files) are located at Juniper's headquarters in the Northern District of California. Most potential third-party witnesses, including three of the six inventors of the patents-in-suit, two of the prosecuting attorneys, and employees of a third party to which Juniper spun off one of the accused products are also located in the Northern District of California—none are in Texas. By contrast, plaintiff

---

[1] *Blue Spike, LLC v. Juniper Networks, Inc.*, No. 6:17-cv-16, 2018 WL 4222994, at \*6 (E.D. Tex. Mar. 8, 2018) (Mitchell, M.J.) (transferring where "two factors favor transfer" and "rest are neutral"); *Parity Networks, LLC v. Juniper Networks, Inc.*, No. 6:17-cv-495, 2018 WL 9539505, at \*6 (E.D. Tex. Aug. 10, 2018) (Mitchell, M.J.) (transferring where "two factors favor transfer," one "disfavors transfer," and "rest are neutral") *reconsideration denied*, 2018 WL 10124889 (E.D. Tex. Sept. 17, 2018) (Schroeder, J.); *Chrimar Sys., Inc. v. Juniper Networks, Inc.*, No. 6:15-cv-630, 2016 WL 126936, at \*6 (E.D. Tex. Jan. 11, 2016) (Love, M.J.) (transferring where "three important factors" favored transfer and several factors slightly favored plaintiff's chosen venue); *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224, 2012 WL 194382, at \*7 (E.D. Tex. Jan. 23, 2012) (Gilstrap, J.) (transferring where four factors favored transfer and rest were neutral); *GraphOn Corp. v. Juniper Networks, Inc.*, No. 2:07-cv-373, Dkt. No. 161 (E.D. Tex. Dec. 30, 2009) (Everingham, M.J.) (*sua sponte* reconsidering and granting motion where four factors favored transfer, after previous denial based on pendency of related Virginia action).

Longhorn is a non-practicing entity, owned by a Wyoming limited liability company, that likely has no evidence or witnesses in Texas, or any connection to this District apart from its designation of a financial advisor's office in Marshall as its principal place of business.

In sum, four of the traditional § 1404(a) factors strongly favor transfer, while one factor favors denial. As such, Juniper respectfully asks that this case become the latest in a long line of Eastern District cases finding that the Northern District of California is the appropriate forum for Juniper under § 1404(a), and transfer it there.

## FACTUAL BACKGROUND

Juniper is in the business of designing and selling high-performance networking products and services, including routers, gateways, associated software, and support.[2] Juniper is a Delaware corporation with its principal place of business in Sunnyvale, California, within the Northern District of California.[3] Juniper's employees research, design, develop, and test the vast majority of its products in Sunnyvale.[4] In addition to those development activities, Juniper employees in Sunnyvale are responsible for the marketing and finances for Juniper's products, since the finance, accounting, and marketing departments are also headquartered there.[5]

None of the relevant Juniper employees or documents are located in the Eastern District of Texas.[6] This is unsurprising since Juniper doesn't have any offices in Texas.[7] Of the seven Juniper engineers identified to date with relevant technical information about the accused products,

---

[2] Accompanying Declaration of David M. Saunders ("Saunders Decl.") at ¶ 4.

[3] *See id*.

[4] *Id*. at ¶ 6.

[5] *Id*. at ¶¶ 6, 11.

[6] *Id*. at ¶¶ 8, 15.

[7] Juniper did have sales offices in Austin and Plano, but closed both on March 31, 2021. *See id.* at ¶ 14.

six work in Sunnyvale, while the seventh works in Canada.[8] Similarly, the two individuals Juniper has identified to date with relevant non-technical knowledge are both located in Sunnyvale.[9] Juniper has also identified a product manager with relevant knowledge of both technical and non-technical issues, located in Switzerland.[10] The documents associated with the accused products (including confidential source code files) are also located and maintained in Sunnyvale.[11] And Juniper Texas-based employees don't have unique information or knowledge about the accused functionalities.[12] In short, virtually all Juniper employees with relevant knowledge and relevant Juniper documents are located in the proposed transferee venue, the Northern District of California.

Longhorn, by contrast, is a holding company unlikely to have any relevant witnesses or evidence in the Eastern District of Texas, its chosen venue. The complaint alleges only that Longhorn is a Texas limited liability company with a principal place of business in Marshall, Texas.[13] Apart from that office—which appears to be a financial advisor's office—Longhorn hasn't alleged any facts showing its connections to the Eastern District.[14] On the contrary, Long-

---

[8] *Id.* at ¶¶ 8–10.

[9] *Id.* at ¶ 12.

[10] *Id.* at ¶ 11.

[11] *See id.* at ¶ 15.

[12] *Id.* at ¶ 14.

[13] Dkt. No. 1 (Complaint) at ¶ 1.

[14] The complaint states that Longhorn's principle place of business is at 203 East Travis Street, Marshall, Texas 75670. *Id.* In an October 2016 image, Google Street View showed this to be a small, freestanding office with a sign for "Knox Financial Advising." Ex. 1. And Noble Wealth Advisors (which has a principal named "Knox") currently holds itself out has having an office at this location according to its website www.noblewealthtx.com. Ex. 2.

horn's Rule 7.1 Disclosure Statement states that "its parent corporation is Alpha Alpha Intellectual Partners LLC."[15] And according to Longhorn's January 12, 2018 Certificate of Formation, that LLC is one of Longhorn's two managers (the other being an individual named Thomas Schweitzer), both with addresses in Cheyenne, Wyoming.[16]

Since its 2018 formation, Longhorn has filed 38 patent-infringement suits, all in the Eastern District. These include the current suit as well as a 2019 lawsuit in which Longhorn asserted the same five patents against Juniper. Before answering the complaint in that case, Juniper sent Longhorn correspondence detailing why Juniper didn't infringe the patents, why the patents are invalid, and attaching a draft motion to transfer the case to the Northern District of California.[17] In response, Longhorn filed a notice of dismissal without prejudice the day before Juniper's answer was due.[18]

Of the 36 other lawsuits Longhorn has initiated, Longhorn didn't assert any of the patents-in-suit in 28 of them. In six cases Longhorn asserted one patent, U.S. Patent No. 7,260,846, that overlaps with the patents-in-suit here. Three of those cases have settled,[19] and Longhorn has yet to serve the complaint in two others.[20] In the last case, the Markman hearing is scheduled for

---

[15] Dkt. No. 3.

[16] Ex. 3. Like Longhorn's Marshall office, the Cheyenne address likely is for an agent—specifically, a company that assists with LLC formation in Wyoming. *See* MyLLC.com, *available at* <https://www.myllc.com/contact-us.aspx> (listing an office at the Cheyenne address). Either way, there's no indication that Longhorn has any employees or evidence in this District, or that any of its investing members are located here.

[17] Ex. 4.

[18] *Longhorn HD LLC v. Juniper Networks, Inc.*, 2:19-cv-385-JRG, Dkt. No. 16.

[19] *Longhorn HD LLC v. Palo Alto Networks, Inc.*, 2:20-cv-0259-JRG; *Longhorn HD LLC v. Sophos Ltd.*, 2:20-cv-00261-JRG; *Longhorn HD LLC v. Trend Micro Inc.*, 2:20-cv-00348-JRG.

[20] *Longhorn HD LLC v. Lanner Elecs. Inc.*, 2:20-cv-00260-JRG; *Longhorn HD LLC v. Mitel Software Techs. Ltd.*, 2:20-cv-00350-JRG.

September 29, 2021.[21] And Longhorn has asserted the same five patents-in-suit in two cases. In each of those cases, Longhorn dismissed the case before the defendant answered the complaint.[22]

And much like Longhorn itself, none of the five patents-in-suit has any apparent connection to Texas or this District. The known facts indicate that two of the patents were developed in the Northern District of California, where three inventors now reside. The other three patents were developed in Japan, Sweden, and elsewhere in the United States (either Virginia or Florida). More specifically, the complaint alleges that "the '732 Patent was developed by Hasan Alkhatib and Bruce Wootton at IP Dynamics, Inc.," and "the '421 Patent was developed by Pawan Goyal at Digital Asset Enterprises LLC."[23] The applications for these patents indicated that the inventors resided in Santa Clara County (i.e, the same county as Juniper's Sunnyvale headquarters, in the Northern District of California).[24] Since the companies the inventors worked for also were located in Santa Clara County (with one in Sunnyvale), the patents almost certainly were developed in the Northern District of California.[25] And according to their LinkedIn profiles,

---

[21] *See Longhorn HD LLC v. NetScout Systems, Inc.*, 2:19-cv-385-JRG.

[22] *Longhorn HD LLC v. Fortinet Inc.*, 2:19-cv-00124-JRG; *Longhorn HD LLC v. Check Point Software Techs. Ltd.*, 2:19-cv-00384-JRG.

[23] Dkt. No. 1 at ¶¶ 14, 18.

[24] Ex. 5 at 1, 5.

[25] Ex. 6 at 1, 8. As shown in Ex. 6, the complaint's allegations about where each patent was developed correspond to initial assignees—e.g., the complaint alleges the '732 Patent was developed at IP Dynamics, the initial assignee in Santa Clara, CA. *Compare* Dkt. No. 1 at ¶ 14 *with* Ex. 6 at 1. Similar allegations about the '778, '790, and '846 patents likewise correspond with the initial assignees. *Compare* Dkt. No. 1 at ¶¶ 15–17 *with* Ex. 6 at 3, 5, 7. The allegation about the '421 Patent appears to be erroneous, since that patent initially was assigned to Ensim Corp. in Sunnyvale, CA, and was only assigned to "Digital Asset Enterprises" (named in the complaint) seven years later. Ex. 6 at 8. Further, Digital Asset Enterprises had a Delaware address, *id.*, and the only Delaware-registered entity by that name was formed in 2007, seven years after the application. *See* Delaware Entity Search, *available at* <https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx>. Mr. Gowal thus must've developed the '421 Patent at Ensim, not Digital Asset Enterprises.

that's where the two inventors of the '732 Patent, Mr. Alkhatib and Mr. Wooton, still reside.[26]

The complaint further alleges that the '790 Patent "was developed by Jan Forslöw at Interactive People Unplugged AB," the '846 Patent "was developed by Christopher Day at Steelcloud, Inc.," and the '778 Patent "was developed by Osamu Nakazawa at Oki Electric Industry Co., Ltd."[27] But although the '790 Patent's application indicates that Mr. Forslöw and his company were once located in Stockholm, Sweden, his LinkedIn profile shows that he moved to the San Francisco Bay area in 2004, where he's worked ever since.[28] Based on the available information, the remaining two inventors, Christopher Day and Osamu Nakazawa, likely reside in Florida and Japan, respectively, and Juniper hasn't found anything suggesting that they are, or ever were, residents of Texas.[29]

Other potentially relevant third-party witnesses and evidence likewise are outside of the Eastern District of Texas. For instance, much like the inventors they represented, the prosecuting attorneys for the '732 and '421 Patents are located in the Northern District of California.[30] The

---

[26] Ex. 7 at 1-9. According to Mr. Goyal's LinkedIn profile, he now resides in India. Ex. 6 at 10–11 (further showing that he worked at Ensim in Sunnyvale until 2002, years before the '421 Patent's assignment to the company incorrectly named in the complaint).

[27] Dkt. No. 1 at ¶¶ 15–17.

[28] *Compare* Ex. 5 at 3 *and* Ex. 6 at 5 *with* Ex. 7 at 12.

[29] The '778 Patent's application indicates that Mr. Nakazawa and his company were located in Tokyo, Japan. Ex. 5 at 2; Ex. 6 at 3. And the '846 Patent's application indicates that Mr. Day was located in Biscayne Park, Florida, while his company (i.e., Steelcloud) was located in Virginia. Ex. 5 at 4; Ex. 6. Publicly available materials further indicate that Mr. Day is currently a vice president at ManTech, located in the Miami, FL area. Ex. 7 at 16.

[30] Burt Magen and the firm now known as Vierra Magen Marcus LLP prosecuted the '732 Patent are located in Daly City, in the Northern District of California. *See* VierraMagen.com, *available at* <http://www.vierramagen.com/contact>. Likewise, attorneys at Fenwick & West's Silicon Valley office (including Albert Smith and Sabra-Anne Truesdale) prosecuted the '421 Patent. *See* <https://www.fenwick.com/Pages/offices.aspx>. Based on public information, it appears that Mr. Smith is now retired and Ms. Truesdale is currently in-house counsel for Western Digital, located in the Northern District of California.  Ex. 8.

prosecuting attorney for the '846 Patent similarly is located near the inventor's residence in Florida, while firms in Washington, D.C. handled the prosecutions of the '778 and '790 Patents (i.e., those with inventors then residing in foreign countries).[31]

And evidence and witnesses regarding the accused Pulse feature are also likely located in the Northern District of California. In October 2014, Juniper sold the accused Pulse feature to Siris Capital.[32] Juniper employees who were part of the Pulse group left with it and helped form a separate company, Pulse Secure LLC, which is headquartered in San Jose, California, located in the Northern District of California.[33] The relevant witnesses and documents regarding the Pulse feature are likely located in San Jose.

Thus, the vast majority of the evidence and witnesses are in the Northern District of California. Little or no evidence, and few or no witnesses, are in the Eastern District of Texas.

## LEGAL STANDARDS

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." By the statute's terms, the preliminary question under § 1404(a) is whether an action "might have been brought" in the destination venue—i.e. whether venue would've been proper in the transferee court.[34]

---

[31] *See* Shutts.com, *available at* https://shutts.com/lawyer/steven-m-greenberg ('486 Patent) RabinBerdo.com, *available at* https://www.rabinberdo.com/contact.html ('778) Patent); BannerWitcoff.com, *available at* https://bannerwitcoff.com/about-us/locations ('790 Patent).

[32] Saunders Decl. at ¶ 16; Juniper Completes Sale of Junos Pulse as Pulse Secure Business Emerges, *available at* https://www.enterprisenetworkingplanet.com/netsecur/Juniper-completes-sales-of-junos-pulse-as-pulse-secure-business-emerges.html.

[33] Saunders Decl. at ¶ 16; Pulse Secure Locations, *available at* https://www-prev.pulsesecure.net/company/locations/.

[34] *E.g.*, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"); *see also id.* at 311; *TC Heartland, LLC v. Kraft Foods Group Brands, LLC*, 137 S.Ct. 1514,

As long as venue would've been proper in a transferee court, the law provides that this Court should grant a § 1404(a) motion if the movant shows that its proposed forum is clearly more convenient. And as the Federal Circuit explained in *In re TS Tech*: "Under Fifth Circuit law, a motion to transfer venue should be granted upon a showing that the transferee venue is 'clearly more convenient.'"[35] The Fifth Circuit's required § 1404(a) analysis then "turns on a number of private and public interest factors," identified in the argument below, "none of which are given dispositive weight."[36] The plaintiff's choice of venue isn't one of the factors.[37]

## **ARGUMENT**

This action could've been brought in the Northern District of California. And as the relevant factors establish, it's "clearly more convenient" than the Eastern District of Texas for purposes of the applicable Fifth and Federal Circuit precedents. Thus, transfer is warranted.

## I.   LONGHORN COULD'VE BROUGHT THIS CASE IN THE NORTHERN DISTRICT OF CALIFORNIA.

Juniper is headquartered in Sunnyvale, California, where it has designed, tested, marketed, and sold the accused products.[38] Hence, Longhorn could've brought suit there, and the preliminary § 1404(a) question should be answered in the affirmative.[39]

---

1521 (2017).

[35] *TS Tech*, 551 F.3d at 1319 (quoting *Volkswagen II*, 545 F.3d at 315); *accord In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

[36] *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

[37] *E.g.*, *TS Tech*, 551 F.3d at 1320 ("precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."); *accord Volkswagen II*, 545 F.3d at 315.

[38] Saunders Decl. at ¶¶ 4–12.

[39] *E.g.*, *TC Heartland*, 137 S.Ct. at 1521; *Volkswagen II*, 545 F.3d at 312.

## II.      THE PRIVATE- AND PUBLIC-INTEREST FACTORS WARRANT TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA.

### A.      THE PRIVATE-INTEREST FACTORS STRONGLY FAVOR TRANSFER.

The private-interest factors that the Fifth Circuit considers include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[40] These factors warrant transfer when the evidence and witnesses are mostly located in the movant's proposed venue, with little or no evidence and few or no witnesses in the current venue. The Federal Circuit has repeatedly reached that conclusion,[41] as has this Court when granting previous Juniper motions to transfer.[42] And a close examination of the relevant private-interest factors confirms that the same conclusion is warranted here.

**Private-Interest Factor 1 (ease of access to sources of proof)**: As this Court explained in *Wireless Recognition Technologies v. A9.com*, despite the "technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor."[43] In this case, the vast majority of the relevant evidence is located at Juniper's headquarters in Sunnyvale. That's where six of seven of the engineers involved in developing, updating, and maintaining the accused products work.[44] And that's where

---

[40] *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203).

[41] *In re Nintendo*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citing *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); and *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008)).

[42] *See* note 1, *supra* (collecting cases).

[43] *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-cv-364, 2012 WL 506669, at *3 (E.D. Tex. Feb. 15, 2012) (Gilstrap, J.); *see also Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009) (Davis, J.) (similar); *TS Tech*, 551 F.3d at 1320–21.

[44] Saunders Decl. at ¶¶ 8–10.

the marketing and financial teams for the accused products work.[45] As such, that's also where Juniper maintains the documents relevant to the accused products, including technical, marketing, and financial documents.[46] In addition, the evidence of third-party Pulse Secure, LLC (to which Juniper spun off the accused Pulse feature) is likely located at its headquarters in San Jose, also in the Northern District of California.[47]

The location of Juniper's evidence is particularly pertinent because, as the accused infringer, Juniper almost certainly will produce the majority of the relevant evidence. As the Federal Circuit explained in *In re Genentech*:

> In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.[48]

And this factor weighs even more heavily in Juniper's favor here because Longhorn hasn't alleged any facts regarding any business being conducted at its Marshall office. That is, as this Court identified when granting a previous motion to transfer by Juniper, "recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis."[49] And considering Longhorn's recent formation and other publicly available information noted above, it's unlikely that Longhorn has any evidence at its office that would weigh against transferring this action.[50]

---

[45] *E.g.*, *id*. at ¶ 12. Juniper also identified a product manager located in Switzerland. *Id*. at ¶ 11.

[46] *Id.* at ¶ 15.

[47] *Id.* at ¶ 16.

[48] 566 F.3d at 1345; *accord Wireless Recognition*, 2012 WL 506669, at *3 ("[T]he Federal Circuit counsels that an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases."); *Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-cv-511, 2010 WL 2950351, at *2 (E.D. Tex. July 22, 2010) (Everingham, M.J.).

[49] *Network Prot.*, 2012 WL 194382, at *4.

[50] *See also Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-cv-499, 2014 WL 1374045, at

Thus, because most of the relevant evidence is located in the Northern District of California, and it's likely that none is located in the Eastern District of Texas, the first private-interest factor weighs heavily in favor of transfer.

**Private-Interest Factors 2 and 3 (convenience for willing witnesses and securing the attendance of other witnesses):** As the Federal Circuit has repeatedly held, the "convenience and cost of attendance for witnesses is an important factor in the transfer calculus."[51] Here, this important factor favors transfer to the Northern District of California.

The potential party and third-party witnesses predominantly reside in that district, including the vast majority of Juniper witnesses who are likely to testify about issues relating to non-infringement and damages.[52] For example, six of the seven engineers that Juniper has so far identified as having technical knowledge relevant to the accused functionalities work in Sunnyvale; none work in Texas.[53] While a product manager works in Switzerland, the two non-technical employees Juniper has identified so far are located in Sunnyvale.[54] Similarly, any third-party witnesses from Pulse Secure, LLC, likely work at their company's headquarters in the Northern District of California.[55] And as detailed above, three of the six named inventors of the patents-in-suit also appear to reside in the Northern District of California, as do two of the patent prosecutors.

---

*2 (E.D. Tex. Mar. 13, 2014) (Schneider, J.) ("[D]ocuments that have been moved to a particular venue in anticipation of a venue dispute should not be considered."); *Software Rights*, 2010 WL 2950351, at *2.

[51] *Nintendo*, 589 F.3d at 1198; *accord Genentech*, 566 F.3d at 1343 ("The convenience of the witnesses is probably the single most important factor in the transfer analysis.") (quoting *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).

[52] Saunders Decl. at ¶¶ 6–13.

[53] *Id*. at ¶¶ 8–10.

[54] *Id*. at ¶ 11-12.

[55] *See id*. at ¶ 16.

Thus, transfer to that district would significantly reduce the cost of trial attendance for most of the potential party and non-party witnesses.

Of the remaining inventors, one is most likely located in Florida, while the other two are likely overseas in Japan and India. Similarly, one of the remaining patent prosecutors is located in Florida with the last two residing near Washington, D.C. Those potential witnesses would have to travel a significant distance to trial, whether it be to California or Texas. As such, courts have routinely found that such witnesses, who "will be required to travel 'a significant distance no matter where they testify,'" are discounted for purposes of the transfer analysis.[56]

Overall, the likely absence of any witnesses in the Eastern District of Texas, combined with the substantial number of witnesses residing in the Northern District of California, means that the convenience of the witnesses weighs heavily in favor of transfer.[57]

For similar reasons, the compulsory-process factor further favors of transfer. As noted, three inventors and two patent prosecutors are located in the Northern District of California, as are the relevant employees of third-party Pulse Secure, LLC. To the extent they have relevant information, they likely would be subject to compulsory process in that district, whereas Juniper is not aware of any non-party witnesses under the direct trial subpoena power of this Court.[58]

**Private-Interest Factor 4 (other practicalities):** This Court and the Northern District of California are equally capable of hearing this case. Although Longhorn has filed 36 non-Juniper

---

[56] *E.g.*, *Fujitsu*, 639 F. Supp. 2d at 767 (quoting *Genentech*, 566 F.3d at 1343–45); *accord Realtime Data LLC v. Barracuda Networks Inc.*, No. 6:17-cv-120, 2017 WL 4791970, at *3 (E.D. Tex. Oct. 24, 2017) (Love, M.J.) (discounting New York witness in the transfer analysis).

[57] *In re Genentech*, 566 F.3d at 1345 (finding that this factor heavily weighed in favor of transfer because "a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas"); *see also AC-QIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 776 (E.D. Tex. 2014) (Davis, J.).

[58] *See* Fed. R. Civ. P. 45 (c)(1)(B).

cases in this District, only two involved the same five patents-in-suit, and none have proceeded much beyond the initial-pleadings stage. Thus, this Court hasn't yet had the opportunity to obtain specialized knowledge that would make it especially practical to keep this action here (e.g., about the patents, claim construction, etc.), making this factor is neutral.

Accordingly, for the reasons set forth above, three private-interest factors strongly favor transfer to the Northern District of California, with the remaining factor being neutral.

### B.   THE PUBLIC-INTEREST FACTORS ALSO FAVOR TRANSFER.

The public-interest factors that the Fifth Circuit considers include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law."[59] Like the private-interest factors, the public-interest factors support transfer.

**Public-Interest Factor 1 (court congestion):** Based on the U.S. District Court statistics for the 12-month period ending December 31, 2020, the median time from filing to termination for all civil cases is faster in this District (i.e., 8.9 months, versus 11.3 months in the Northern District), as is the time from filing to trial (i.e., 19.8 months, versus 36.2 months in the Northern District).[60] Since the median times are faster in this District, this factor slightly favors transfer.[61]

---

[59] *TS Tech*, 551 F.3d at 1319 (quoting *Volkswagen II*, 545 F.3d at 315) (alteration omitted).

[60] *See* Table C-5, Civil Statistical Table for the Federal Judiciary (December 31, 2021), *available at* https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2020/12/31.

[61] *But see, e.g., Affinity Labs of Texas v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (Clark, J.) (noting "time to trial is the most speculative of all of the factors"); *Brite Smart Corp. v. Google Inc.*, No. 2:14-cv-760, 2015 WL 4638215, at *3 (E.D. Tex. Aug. 3, 2015) (Payne, M.J.) (similar).

**Public-Interest Factor 2 (local interest):** As the Fifth Circuit has explained, this factor stems from the principle that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."[62] As such, it analyzes the "factual connection" a case has with both the transferee and transferor venues.[63] If there are significant connections between a venue and the events that gave rise to the suit, this factor weighs in that venue's favor, even when a case involves products sold nationwide.[64] Here, the events that gave rise to the suit occurred in the Northern District of California. For example, the development, marketing, and updating of the accused products took place and continues to take place in Sunnyvale, California. And two of the patents-in-suit also were developed in the Northern District of California, while none were developed in Texas. Indeed, the only connection Longhorn has to this venue is its designation of an office in Marshall as its principal place of business.

In such circumstances, courts have repeatedly found this factor to favor transfer. For instance, in *Fujitsu v. Tellabs*, Judge Davis found this factor to favor the "particularized local interest[s]" of the forum where the "accused products [were] designed and developed" and the defendants' principal places of business were located.[65] Under similar circumstances, the Federal Circuit has similarly found this factor to favor transfer.[66] Thus, this Court should once again conclude that this factor weighs in favor of transfer.

---

[62] *Volkswagen I*, 371 F.3d at 206 (internal alteration omitted).

[63] *Id*.

[64] *Hoffmann-La Roche*, 587 F.3d at 1338; *accord Fujitsu*, 639 F. Supp. 2d at 769.

[65] 639 F. Supp. 2d at 769 (rejecting plaintiff's argument regarding any "non-particularized interest [the Eastern District of Texas] has in removing infringement from within its borders").

[66] *E.g.*, *Hoffmann-La Roche*, 587 F.3d at 1336.

**Public-Interest Factors 3 and 4 (familiarity with governing law and avoiding conflicts of laws):** This District and the Northern District of California are both familiar with federal patent law and capable of adjudicating this matter. And this case implicates no conflicts of law. Thus, these factors are neutral or inapplicable.[67]

Accordingly, because one public-interest factor favors transfer, one slightly favors denial, and the remaining two are neutral or inapplicable, the public-interest factors further support transferring this case.

## CONCLUSION

Four of the traditional § 1404(a) factors strongly favor transfer to the Northern District of California, where Juniper and the majority of relevant documents and witnesses are located, while one supports denial of transfer. Thus, and as with five prior Juniper cases involving similar operative facts, Juniper respectfully requests that this Court transfer this case to the Northern District of California.

---

[67] *E.g.*, *Orinda Intellectual Properties USA Holding Grp., Inc. v. Sony Corp.*, No. 2:08-cv-323, 2009 WL 3261932, at *4 (E.D. Tex. Sept. 29, 2009) (Everingham, M.J.).

Dated: April 20, 2021

Respectfully submitted,

*/s/ Alan M. Fisch*

Alan M. Fisch
Lead Attorney
D.C. Bar No. 453068
*alan.fisch@fischllp.com*
R. William Sigler (*pro hac vice*)
D.C. Bar No. 490957
*bill.sigler@fischllp.com*
Jeffrey M. Saltman (*pro hac vice*)
D.C. Bar No. 979812
*jeffrey.saltman@fischllp.com*
Adam A. Allgood
Texas Bar No. 24059403
*adam.allgood@fischllp.com*
FISCH SIGLER LLP
5301 Wisconsin Avenue NW
Fourth Floor
Washington, DC 20015
202.362.3500

*Attorneys for Defendant*
*Juniper Networks, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of Texas, Marshall Division, via the CM/ECF system, which will send a notice of filing to all counsel of record who have consented to service by electronic means.

*/s/ Alan M. Fisch*
Alan M. Fisch

**CERTIFICATE OF CONFERENCE**

Per Local Rule CV-7(i), Juniper states that counsel has complied with the meet-and-confer-requirement of Local Rule CV-7(h) and that Longhorn opposes the foregoing motion.

*/s/ Alan M. Fisch*
Alan M. Fisch